UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

vs.                                                                          Case No. 10-20766

PAUL WILLIAM HILTON,                              HON. AVERN COHN

    Defendant/Petitioner.
_____/

**MEMORANDUM AND ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
(Doc. 191)
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALALBILITY**

I. Introduction

This is a criminal case. Defendant/Petitioner Paul Hilton (Hilton) plead guilty in front of the undersigned to two counts of conspiracy to produce child pornography. As will be explained, Hilton convinced a 21-year old online girlfriend to sexually assault a two year-old girl, record these actions, and send these recordings to him. Hilton did this while on federal supervised release for prior child pornography convictions. The Court sentenced Hilton to forty years imprisonment followed by a lifetime of supervised release. Hilton appealed, challenging the denial of two different motions to suppress which claimed violations of his Fourth and Fifth Amendment rights. The Court of Appeals for the Sixth Circuit affirmed. United States v. Hilton, No. 14-1571 (6th Cir. Sept. 9, 2015). (Doc. 172) and the Supreme Court denied certiorari. United States v. Hilton, No. 15- 1870 (U.S. Apr. 5, 2016). (Doc. 179).

Before the Court is Hilton's pro se motion under 28 U.S.C. § 2255. (Doc. 191).

The government has filed a response (Doc. 199) and Hilton a reply (Doc. 200). For the reasons that follow, the motion will be denied.

## II. Background

### A.

The Sixth Circuit described in detail the background facts leading to Hilton's conviction. Likewise, the government's response contains a detailed factual recitation. Both are incorporated by reference. A shorter background section follows:

#### A. Hilton's Prior Convictions and His Conduct Before Arrest

Hilton has two prior convictions for child pornography offenses. Both offenses occurred in the Eastern District of Missouri in 2002. Hilton received concurrent 60-month sentences for those crimes, followed by three years of supervised release. In September 2007, less than two years after his release from prison, Hilton violated the terms of supervised release by failing to complete sex offender treatment and by having unauthorized contact with underage children without the permission of his probation officer. On November 7, 2007, Hilton's term of supervised release was revoked and he was sentenced to six (6) months in prison followed by an additional thirty months of supervised release. A probation officer in Missouri supervised Hilton from February 2009 until the date of Hilton's arrest on the charges in this case.

During an evidentiary hearing in this case regarding one of Hilton's motions to suppress, the Missouri probation officer explained that he frequently visited Hilton, including unannounced visits, work visits, and "plain view" searches of Hilton's residence. The probation officer talked with Hilton frequently about not using the internet. The probation officer also met with Hilton's treatment providers, local law

2

enforcement officers, Hilton's sister, and even attended some of Hilton's sex offender group therapy sessions. Eventually, the probation officer received a forwarded email written by someone identifying himself as "K[]." K[] first called and then later emailed the Sheriff's Department near Hilton's address. K[] provided a variety of details about Hilton, including that he used a computer with internet access, an internet presence, and had photos of underage girls, all of which were in violation of the terms of his supervised release. Based on follow up corroboration of K[]'s tip, the probation officer obtained a warrant to search Hilton's residence. The search revealed two phones, including a Blackberry Curve, which Hilton admitted to using for child pornography. The officers then obtained a search warrant for the content of the Blackberry. The Blackberry contained evidence of the production, receipt, distribution, and possession of child pornography, as well as the online enticement of several minors.

In May of 2010, when Hilton was sentenced on the supervised release violations, an investigator with the United States Attorney's Office in the Eastern District of Missouri informed FBI agents in Detroit that Hilton may have been involved in the sexual exploitation of a toddler in Detroit. Within the next few days, FBI agents arrested Hilton's co-defendant and apparent on-line girlfriend for sexual exploitation crimes against the child. In November of 2010, agents flew to Oklahoma City to interview Hilton, who was then serving a 10-month prison term for violation of supervised release.

Based on the information contained on Hilton's Blackberry phone, information provided by his co-defendant, and from other investigations, agents learned that Hilton had convinced his co-defendant to sexually abuse a minor and send photos to Hilton.

B.

Following his indictment on several counts of sexual exploitation and child pornography offenses, Hilton filed two motions to suppress. Hilton first moved to suppress the evidence obtained during the search of his residence based on a lack of "reasonable suspicion" under the terms of his supervised release. Hilton then moved to suppress the two sets of statements made to law enforcement: one to the Missouri probation officer on the day of his arrest and the other to an FBI a while in Oklahoma City. Hilton also moved to suppress all evidence obtained from the search of his Blackberry phone for a variety of constitutional reasons. After two different evidentiary hearings, the Court denied all of these motions. See Doc. 120, Order Denying Motion to Suppress Evidence.

Eventually, Hilton entered a conditional guilty plea to conspiracy to produce child pornography, reserving the right to appeal the denials of his motions to suppress evidence. (Doc. 130: Rule 11 Plea Agreement). The Court sentenced Hilton as noted above.

### III. Legal Standards

28 U.S.C. § 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a). To prevail on a § 2255 motion, "a petitioner must demonstrate the existence of an error of constitutional magnitude which has a substantial and injurious

effect or influence on the guilty plea or the jury's verdict." Humphress v. United States, 398 F.3d 855, 858 (6th Cir. 2005). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." Watson v. United States, 165 F.3d 486, 488 (6th Cir. 1999).

As "[§] 2255 is not a substitute for a direct appeal," Regalado v. United States, 334 F.3d 520, 528 (6th Cir. 2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, Frady, 456 U.S. at 166. Though non-constitutional errors are generally outside the scope of § 2255 relief, see United States v. Cofield, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error "by establish[ing] a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process,' " Watson, 165 F.3d at 488 (internal quotation marks omitted) (quoting United States v. Ferguson, 918 F.2d 627, 630 (6th Cir. 1990)). Accordingly, alleged sentencing errors, including the proper application of the guidelines, "does not warrant collateral relief under § 2255 absent a complete miscarriage of justice." Jones, 178 F.3d at 796.

Hilton has raised allegations of ineffective assistance of counsel which may be raised for the first time in a § 2255 motion. Massaro v. United States, 538 U.S. 500, 508–09 (2003). To establish ineffective assistance of counsel under the Sixth Amendment, Hilton must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Hilton must first show that his counsel's performance was

5

deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. A court must afford defense attorneys "wide latitude" and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. Defense counsel are entitled to a "strong presumption" that they made "all significant decisions in the exercise of reasonable professional judgment." Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011).

If Hilton succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding," Hilton must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94.

IV. Overview of Claims

Hilton's amended motion to vacate states four claims for relief. First, Hilton objects to the warrantless search of his residence. Second, Hilton claims Fifth Amendment violations based on the statement he made to his Missouri probation officer. Third, he makes a variety of challenges to the search of his Blackberry phone. Fourth, and finally, Hilton alleges that his attorney was ineffective. As the government correctly notes, Hilton's claims are more appropriately construed as follows: (1) arguments raised on direct appeal, (2) prosecutorial misconduct, and (3) ineffective assistance of counsel claims. Each claim is addressed in turn below.

V. Discussion

A. Arguments Raised on Direct Appeal

1.

It is well established that "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." Dupont v. United States, 76 F.3d 108, 110-11 (6th Cir. 1996) (citations omitted); Wright v. United States, 182 F.3d 458, 467 (6th Cir. 1999) ("Absent exceptional circumstances, or an intervening change in the case law, Wright may not use his § 2255 petition to relitigate this issue [decided on direct appeal]."); accord Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases).

2.

The government says that much of Hilton's motion restates issues decided on direct appeal. The Court agrees. For example, Hilton repeats the argument that the government did not have the reasonable suspicion necessary to justify the search of his home pursuant to the supervised release condition. See Doc. 196: Amended Motion to Vacate at 1-32. However, the Sixth Circuit heard and rejected this claim. The court of appeals found reasonable suspicion "to believe that Hilton had violated his supervised release by having the [Mocospace] profile at all, which would have entailed using a computer or other Internet-ready device without [the probation officer's] permission." United States v. Hilton, 625 F. App'x 754, 758 (6th Cir. 2015). The court of appeals also addressed Hilton's argument that there was no reasonable suspicion, stating "reasonable suspicion need not rule out the possibility of innocent conduct." Id. (quoting Navarette v. California, 134 S. Ct. 1683, 1691 (2014)). As the Sixth Circuit concluded,

"reasonable suspicion requires only 'a moderate chance of finding evidence of wrongdoing.'" Id. (quoting Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 371 (2009)).

Similarly, the Sixth Circuit rejected Hilton's second and third claims. Hilton attempts to extend his probation officer's failure to provide Miranda warnings prior to questioning into suppression of all evidence against him. Hilton says that the un-Mirandized statements amounted to per se coercion, and if not per se coercion, then inherent coercion based on the terms of his supervised release violation. From that alleged coercion, Hilton suggests the recovery of the Blackberry itself was unlawful and the subsequent search warrant obtained for the contents of the Blackberry was likewise unlawful. Finally, Hilton appears to include suppression of his Mirandized statements, made several months after his arrest, to the FBI as fruit of the poisonous tree from the un-Mirandized statements made at the time of arrest.

Again, the Sixth Circuit considered and rejected these arguments. The Sixth Circuit also held that regardless of whether the probation officer directed his colleagues to the kitchen drawer to locate the Blackberry, the search team would have found the phone during their lawful search of the home. Thus, the inevitable discovery doctrine applied to the recovery of the phone. Hilton, 625 F. App'x at 759-760 ("Because [the probation officer's] search based on reasonable suspicion would have inevitably found the Blackberry and also would have allowed him to retrieve and copy all data from the phone, there is no Fifth Amendment violation."). As to the contents of the Blackberry phone, the court of appeals identified two different reasons to uphold the search: (1) agents obtained a search warrant as required by Riley v. California, 134 S. Ct. 2473

(2014); and (2) even if they hadn't, Hilton's supervised release conditions meet the "other case-specific exceptions" Riley identified as justifying warrantless searches of cell phones. Hilton, 625 F. App'x at 760 ("Even if [the probation officer] had not obtained a warrant prior to searching the phone, however, Riley contemplates that 'other case-specific exceptions may still justify a warrantless search of a particular phone.' Hilton's supervised release terms surely provide one of these exceptions.") (quoting Riley, 134 S. Ct. at 2494). Finally, the Sixth Circuit upheld the Court's ruling that Hilton's months-later statements to the FBI while he was incarcerated on his supervised release violation sentence were sufficiently attenuated from the unwarned statements on the morning of his arrest. Id. at 761.

Overall, Hilton attempts to relitigate issues raised before the Court and on direct appeal. This is not permitted on a section 2255 motion. See Dupont, 76 F.3d at 110-11. As such, he is not entitled to relief on any of these claims.

## B. Prosecutorial Misconduct

Hilton raises for the first time a claim of prosecutorial misconduct surrounding the evidentiary hearing, the plea hearing, and at sentencing. Hilton's main prosecutorial misconduct claim focuses on the alleged withholding of a search warrant affidavit until after the evidentiary hearing, which he contends amounts to a Brady violation.

The government says that by failing to raise a Brady claim on appeal, Hilton procedurally defaulted it. The Court agrees. See Bousley v. United States, 523 U.S. 614, 621 (1998). A petitioner must raise his claims on direct appeal, "[o]therwise, the claim is procedurally defaulted" for purposes of § 2255 review. Peveler v. United States, 269 F.3d 693, 698 (6th Cir. 2001) (citing Bousley). "Where a defendant has

procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in [a § 2255 motion] only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley, 523 U.S. at 622 (quotation marks omitted).

Here, Hilton cannot show actual prejudice, as explained below, and his acknowledgment of the facts demonstrating his guilt during the plea hearing forgoes any claim of innocence.

The government also says this claim fails because Hilton alleges a Brady violation for information he received long before any potential trial. "Brady generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." United States v. Bencs, 28 F.3d 555, 560 (6th Cir. 1994); see also United States v. Patrick, 965 F.2d 1390, 1400 (6th Cir. 1992), vacated and remanded on other grounds, 113 S. Ct. 1378 (1993) ("Delay only violates Brady when the delay itself causes prejudice.").

The government's argument is well-taken. Hilton acknowledges receiving the search warrant affidavit before entering his guilty plea, and his lawyer had it at least by November 2012. The record establishes that Hilton's counsel filed a motion to suppress the evidence from the Blackberry—after the evidentiary hearing and after having received the allegedly withheld search warrant affidavit—attacking the use of Hilton's un-Mirandized statements in subsequent search warrants obtained by the government. See Doc. 113: Motion to Suppress at p. 6-15. Thus, Hilton and his attorney had the search warrant affidavit at least seven months before he entered his guilty plea on July 8, 2013. Brady does not create a constitutional right of pre-trial discovery in a criminal

10

proceeding by a point in time. See United States v. Presser, 844 F.2d 1275, 1284 (6th Cir. 1988). Instead, due process requires only that disclosure of exculpatory material be made in sufficient time to permit the defendant to make effective use of that material at trial. See United States v. Farley, 2 F.3d 645, 654 (6th Cir. 1993). Here, because Hilton received the search warrant affidavit long before deciding to enter his guilty plea, there was no Brady violation.

The government further contends that Hilton is not entitled to relief because the information in the search warrant affidavit was not exculpatory. "Brady imposes on the government an obligation to turn over material that is both favorable to the defendant and material to guilt or punishment. Materiality pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." United States v. Agurs, 427 U.S. 97, 112 n.20 (1976). The government is correct in noting that nothing in search warrant affidavit exonerates Hilton of his crimes, points to another offender, or impeaches the credibility of any witness. Instead, the affidavit states facts known to Hilton and his lawyer, testified to in open court, and inculpatory of Hilton's role in the charged offenses.

Finally, the government says that even if it had not disclosed the search warrant affidavit and even if contained exculpatory information, Hilton's claim still fails because the information was not prejudicial. The Court agrees. The Sixth Circuit's decision on the motion to suppress evidence seized from the Blackberry relied not just on the fact that the government obtained a lawful search warrant, but also on the conditions of Hilton's supervised release that permitted a search of electronic devices without a warrant. "Even if [the probation officer] had not obtained a warrant prior to searching

the phone, however, Riley contemplates that 'other case-specific exceptions may still justify a warrantless search of a particular phone. Hilton's supervised release terms surely provide one of these exceptions." Hilton, 625 F. App'x at 760 (quoting Riley v. California,134 S. Ct. 2473, 2494 (2014)).  In other words, the Sixth Circuit found that a warrant was not necessary to justify the search of Hilton's phone.  Thus, any alleged delayed disclosure of the search warrant affidavit for that phone was immaterial and not prejudicial.

Overall, Hilton's prosecutorial misconduct claim fails because it is procedurally defaulted and lacks merit.  Hilton is therefore not entitled to relief under § 2255.

### C. Ineffective Assistance of Counsel

Hilton says his counsel was ineffective in the manner in which in he raised the Fourth and Fifth Amendment arguments regarding the search warrant.  Hilton's claim does not meet the Strickland standard set forth above.  Indeed, the record shows that Hilton's counsel consistently challenged the evidence against Hilton on a variety of constitutional grounds, and in particular mounted a vigorous challenge to the search warrants.  It simply cannot be said that Hilton's counsel was ineffective.  As further explained in the government's response (Doc. 199 at pp. 26-29), Hilton's counsel pursued all possible arguments on his behalf and provided more than adequate representation.  Notably, Hilton says his counsel was deficient in the manner in which Hilton attempted to enter an Alford plea.  This record shows otherwise.  At the plea hearing, Hilton's counsel specifically cited to Alford when the time came for Hilton to lay the factual basis for his guilt.  See Doc. 152: Plea Hearing Transcript at 12.  In short, Hilton's counsel did what Hilton wanted and was not ineffective.

VI. Conclusion

For the reasons stated above, Hilton has not demonstrated that he is entitled to relief under § 2255. Accordingly, the motion is DENIED.

Furthermore, reasonable jurists would not debate the Court's assessment of Hilton's claims, nor conclude that the issues deserve encouragement to proceed further. The Court therefore DECLINES to grant a certificate of appealability under 28 U.S.C. § 2253(c)(2).[1] See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 02/13/2018
Detroit, Michigan

---

[1] The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. See Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.